**CLERK'S COPY**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 FEB 18 PM 3: 35



AARON BLUMAS, Individually, and
on behalf of all others similarly
situated,

    Plaintiffs,

vs.    No. CIV 98-858 MV/RLP

COSTCO WHOLESALE
CORPORATION, a foreign
corporation formerly d/b/a The Price
Club and now commonly known as
"Costco,"

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss, filed November 23, 1998 **[Doc. 14]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**, as explained below.

### BACKGROUND

Plaintiff Aaron Blumas ("Blumas") brings the current action, on behalf of himself and a purported class of similarly situated individuals, against Defendant Costco Wholesale Corporation ("Costco"), raising claims of negligence, strict liability, failure to warn, and unfair trade practices.

For the purpose of resolving this motion, the Court assumes the truth of following facts as plead in the Complaint:

In April of 1998, Blumas, a resident of Rio Rancho, New Mexico, purchased 18 Kirkland Sirloin Patties from Costco. Blumas placed the patties in his freezer and consumed approximately 15 patties from April to June. On or about June 15, 1998, Blumas became ill. He subsequently learned of a July 1, 1998, recall of the Kirkland Sirloin patties he purchased "because of a concern that these products may be contaminated with E. Coli." *See* Recall Notice appended to Complaint as Exhibit A. The Complaint contains no explicit allegation that Blumas' illness was caused by E.Coli but implicitly pleads that his consumption of contaminated sirloin patties caused his illness.[1]

Blumas now brings suit seeking compensation for injuries on behalf of himself and a purported class of similarly situated individuals. Costco moves to dismiss, asserting that the Federal Meat Inspection Act preempts Plaintiffs' claims.

## STANDARD OF REVIEW

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the court must assume as

---

[1] The Complaint does not state that Blumas was diagnosed with a condition caused by E. Coli nor does it state that the remaining sirloin patties in his possession were found to be contaminated. Rather, the Complaint states that "after the consumption of the fifteen (15) contaminated patties with E. Coli 0157:H7, which is a potentially deadly pathogen causing the manifestations of the aforesaid symptoms, problems and injuries, Plaintiff discontinued the use of said patties and has been attempting to get back 'on a road to recovery.'" Complaint ¶ 22.

true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

Defendant Costco moves to dismiss the Complaint on the grounds that the Federal Meat Inspection Act (FMIA), as amended by the Wholesome Meat Act, 81 Stat. 584, 21 U.S.C. § 601 et seq., preempts all of Plaintiffs' claims. Plaintiffs resist, arguing that the FMIA leaves intact traditional tort law remedies. The Court concludes that none of Plaintiffs' state law claims are preempted to the extent that they seek to enforce standards equivalent to those articulated in the FMIA and accompanying regulations.

The Supreme Court has described the process for analyzing whether federal regulation preempts state law claims in a case which happened to interpret the preemptive scope of the FMIA:

> Where, as here, the field which Congress is said to have pre-empted has been traditionally occupied by the States, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. This assumption provides assurance that the federal-state balance will not be disturbed unintentionally by Congress or unnecessarily by the courts. But when Congress has unmistakably ordained that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.

*Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (citations and internal quotations omitted); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting same language). As the Fourth Circuit Court of Appeals echoed,

> [p]articularly when it is urged that a deep-rooted body of product liability law has been preempted in a manner that effectively repeals long-standing state law remedies, we should be fairly assured of the congressional intent, because we must assume that the balance between federal and state law will not be disturbed "unintentionally by Congress or unnecessarily by the courts."

*Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1305 (4th Cir.1992) (quoting *Jones*, 430 U.S. at 525). In this vein, it bears noting that state tort actions for injuries caused by diseased and adulterated meat have been entertained by courts across the country for more than one hundred years, both before and after the passage of the FMIA. Sharlene W. Lassiter, From Hoof to Hamburger: the Fiction of a Safe Meat Supply, 33 Willamette L. Rev. 411, 416-44 (1997) (collecting cases from 1897 through 1995, including cases involving E. Coli, and criticizing civil suits as an ineffective means of insuring that the meat supply does not contain hazardous agents such as E. Coli).

"The purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Medtronic*, 518 U.S. at 485. "Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. In

4

the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone*, 505 U.S. at 516. State law may be preempted by federal regulation as well as by federal statute. *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985).

The FMIA was adopted in 1907 to ensure that the "health and welfare of consumers [is] protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 602. The FMIA provides for the U.S. Department of Agriculture (USDA) to inspect all meat to be sold in interstate commerce and to stamp as "Inspected and passed" only that which is found to be unadulterated. 21 U.S.C. § 604. "Adulterated" is specifically defined in the Act and through the implementing regulations. *See* 21 U.S.C. § 601(m). Until October 17, 1994, the USDA did not consider meat containing E. Coli as adulterated and did not inspect for that bacteria. *Texas Food Industry Ass'n v. Espy*, 870 F.Supp. 143, 145 (W.D.Tex., 1994). On that date, the USDA announced that E. Coli would henceforth be treated as an adulterant and instituted a new inspection program. In 1996, prior to the events at issue in this case, 9 C.F.R. 310.25 was promulgated, recognizing E. Coli and salmonella as adulterants and requiring screening for these agents. *Id.*

Section 678 of the FMIA, bears the cumbersome but instructive title:

> *Non-Federal jurisdiction of federally regulated matters; prohibition of additional or different requirements* for establishments with inspection services and as to marking, labeling, packaging, and ingredients; . . . *concurrent jurisdiction over distribution for human food purposes of adulterated or misbranded and imported articles* . . . .

21 U.S.C. § 678 (emphasis added). The body of the statute states as follows:

5

Requirements within the scope of this chapter with respect to premises, facilities and operations of any establishment at which inspection is provided under subchapter I of this chapter, which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory or the District of Columbia . . . . Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter, *but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter, exercise concurrent jurisdiction with the Secretary over articles required to be inspected under said subchapter I, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment . . . . This chapter shall not preclude any State or Territory or the District of Columbia from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.*

21 U.S.C. § 678 (emphasis added).

Quoting only the first half of the statute, Defendant argues that this provision of the FMIA completely preempts all of Plaintiffs' state law claims regarding the contaminated meat which, according to the Complaint, Defendant sold to Plaintiffs. Defendant is correct that the statute does explicitly preempt some state laws affecting the quality and marketing of meat and meat products. *See Jones*, 430 U.S. at 530-31. Further, statutory language such as this which preempts "any requirement" includes both those imposed by state tort law and those imposed through state statute. *Cipollone*, 505 U.S. at 521 (statutory language preempting any "requirement or prohibition" "sweeps broadly and suggests no distinction between positive enactments and common law."); *Nat'l Bank of Commerce of El Dorado v. Kimnerly-Clark Copr.*, 38 F.3d at 991 (8th Cir. 1994).

However, both parties fail to even acknowledge let alone discuss the express grant of concurrent jurisdiction to the states contained in this statute. The statute provides that, "any State . . . may, consistent with the requirements under this chapter, exercise concurrent jurisdiction with the

6

Secretary over articles required to be inspected under said subchapter I, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated." 21 U.S.C. § 678. This statutory language unambiguously grants to the states concurrent jurisdiction to prevent the distribution of adulterated meat. *See Swift & Co., Inc. v. Walkley*, 369 F.Supp. 1198, 1199-1201(S.D. N.Y. 1973) (state law claim that meat products were misbranded not preempted because FMIA expressly grants concurrent jurisdiction to the states to prevent distribution of misbranded meat). "[T]here is no good reason to believe that Congress meant less than what it said." *Cipollone*, 505 U.S. at 522. Although Plaintiffs likely could not pursue a claim for state tort damages based on the distribution of meat which did not fall within the USDA definition of adulterated, this definition now includes meat contaminated by E. Coli. *See Boulahanis v. Prevo's Family Market, Inc.*, 583 N.W.2d 509, 512, 230 Mich.App. 131 (1998) ("Congress has expressly preempted states from placing any additional or different requirements on meat producers other than those of the federal government. . . . [A]ny state tort action based on a theory that adulterated meat was distributed must therefore be based on standards that are identical to federal standards."); *Kircos v. Holiday Food Center, Inc.*, 477 N.W.2d 130, 132, 191 Mich.App. 82, 87 (1991) ("Although Michigan has concurrent jurisdiction for the purposes of preventing the distribution of 'adulterated' food, trichinae-infected pork is not 'adulterated' under the federal act."). Accordingly, Plaintiffs' claims for negligence and strict liability, which address solely the distribution of adulterated meat as defined by the federal regulation, are expressly permitted under the FMIA.

Plaintiffs' claims for failure to warn and unfair trade practices require further analysis. These claims do not address the distribution of adulterated meat, and thus do not fall within the express grant of concurrent jurisdiction, but rather fall within the zone of "marking, labeling, packaging, or

7

ingredient requirements," in the preemptive statute. Any such requirements which are "in addition to, or different than" those promulgated by the USDA are explicitly preempted by the statute. 21 U.S.C. § 678.

Because this is a case of express rather than implied preemption, the preemptive scope of the statute is governed strictly by the statutory language. *Cipollone*, 505 U.S. at 517; *Nat'l Bank of Commerce*, 38 F.3d at 991. "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue . . . then there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone*, 505 U.S. at 517. Congress' decision to employ a specific, narrow preemptive statute evidences its intent to leave undisturbed other state regulation in the field. *Cipollone*, 505 U.S. at 517; *Worm*, 970 F.2d at 1305; *Nat'l Bank of Commerce of El Dorado v. Dow Chemical Co.*, __ F.3d __, 1999 WL 11762 * 4 (8th Cir. 1999). In particular, narrow preemptive language such as that used in the statute at issue here--preempting only requirements or prohibitions in addition to or different than those imposed by federal regulation--stands in sharp contrast to broad preemptive language used by Congress in other statutes, preempting all state statutes, court decrees, common laws, rules or regulations. *See Worm*, 970 F.2d at 1305 (comparing preemptive language of various federal regulatory statutes); *Dow Chemical Co.*, __ F.3d __, 1999 WL 11762 * 4 (narrow preemptive language similar to that at issue here "attempts to strike a balance between state and federal control"). Further, the Supreme Court has instructed that this Court "must fairly but--in light of the strong presumption against pre-emption--narrowly construe the precise language of [the preemptive statute] and . . . must look to each of petitioner's common-law claims to determine whether it is in fact pre-empted." *Cipollone*, 505 U.S. at 523; *see also Medtronic, Inc. v. Lohr*, 518 U.S. at 485.

The statutory language employed here preempts "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter." 21 U.S.C. § 678. Thus, Plaintiffs' failure to warn and unfair trade practices claims are preempted to the extent they seek to impose requirements different than or in addition to those articulated in the federal regulations. *See Jones*, 430 U.S. at 531-32 (state labeling requirement for meat packages different from that imposed under FMIA was preempted); *Cipollone*, 505 U.S. at 523 (failure to warn claim regarding cigarette warning label preempted insofar as they assert that the warning required by federal regulation was inadequate); *Nat'l Bank of Commerce*, 38 F.3d at 990-92 (failure to warn claim preempted to the extent "seeks to impose any warning requirement beyond that imposed by" federal regulation, discussing Medical Devices Act (MDA)); *Worm*, 970 F.2d at 1307 (same holding regarding the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA)); *Moss v. Parks Corp.*, 985 F.2d 736, 740 (4th Cir.), cert. denied, 509 U.S. 906 (1993) (same holding regarding Federal Hazardous Substances Act (FHSA)).

However, Plaintiffs' claims for failure to warn and unfair trade practices are not completely preempted. By using this particular statutory construction, preempting only requirements "in addition to or different than" the federal standards, Congress specifically left intact state authority to enforce requirements identical to the federal standards. *Mario's Butcher Shop and Food Center, Inc. v. Armour and Co.*, 574 F.Supp. 653, 655 (E.D.Ill. 1983) (action under state consumer fraud and deceptive practices act regarding labels of meat packages not preempted, "however, the standards which shall be applied are those set out by [the FMIA]."); *Swift & Co.*, 369 F.Supp. at 1199-1201 (same); *Medtronic*, 518 U.S. at 495 (discussing MDA); *Nat'l Bank of Commerce*, 38 F.3d at 992 (collecting cases on the MDA); *Worm*, 970 F.2d at 1307 (discussing FIFRA); *Moss*, 985 F.2d at 740

9

(discussing FHSA); *but see Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F.Supp. 278, 283-86 (D.Mass. 1986) (holding plaintiffs cannot use state law actions to pursue claim that defendants failed to comply with federal regulations under the FMIA). "Only state requirements that exceed or are different from those imposed by the FDA are preempted . . . so state tort law may impose liability on those occasions when a manufacturer has failed to comply with the [federal statute's] labeling requirements." *Nat'l Bank of Commerce*, 38 F.3d at 992. As the Supreme Court recently observed in a similar case,

> Nothing in [the preemption provision] denies [the state] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements. Further, The presence of a damages remedy does not amount to the additional or different "requirement" that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with identical existing "requirements" under federal law.

*Medtronic*, 518 U.S. at 495.

Thus "a state is clearly authorized to enact laws aimed at protecting the health and well being of its citizenry, but . . . such laws may not impose different or additional affirmative requirements upon the product." *Mario's Butcher Shop*, 574 F.Supp. at 655; *Swift*, 369 F.Supp. at 1199-1201. Indeed, both *Mario* and *Swift* recognized that plaintiffs could maintain state law causes of action alleging that meat product labels failed to meet federal standards even if those labels had been explicitly approved by the federal agency. *Mario's Butcher Shop*, 574 F.Supp. at 655; *Swift*, 369 F.Supp. at 1199-1201; *see also Ketterer v. Armour & Co.*, 247 F. 921, 927 (2nd Cir. 1917) (plaintiff could bring state tort law claim for diseased meat even though meat had been inspected and approved by federal agents pursuant to the FMIA); *O'Connor v. Armour Packing Co.*, 158 Fed. 241 (1908) (same). The FMIA regulations however must "serve as the standard by which to measure the

defendant's conduct." *Nat'l Bank of Commerce*, 38 F.3d at 992; *Mario's Butcher Shop*, 574 F.Supp. at 654.

Accordingly, Plaintiffs' state law claims for failure to warn and unfair trade practices are not preempted to the extent that they seek to enforce standards regarding "marking, labeling, packaging, or ingredient requirements" identical to those imposed by federal statute and regulation.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **[Doc. 14]** is hereby **DENIED**.

_____
MARTHA VAZQUEZ
DISTRICT COURT JUDGE

Attorney for Plaintiffs:
   Turner Branch

Attorney for Defendants:
   Paul Yarbrough